## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, on behalf of itself and all others similarly situated,<br><br>                       Plaintiff,<br><br>      v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS,<br><br>                       Defendants. | Civil Case No: 1:08-CV-4772-RJS<br><br>**ECF CASE** |
| JAMES CONNOLLY, Individually and On Behalf of All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>      vs.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS and DAVID L. HERZOG,<br><br>                       Defendants. | Civil Case No: 1:08-CV-5072-RJS<br><br>**ECF CASE** |
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>                       Plaintiff,<br><br>      v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS,<br><br>                       Defendants. | Civil Case No: 1:08-CV-5464-RJS<br><br>**ECF CASE** |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
## OAKLAND COUNTY FOR CONSOLIDATION AND FOR
## APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

ONTARIO TEACHERS' PENSION PLAN
BOARD, on behalf of itself and all others similarly
situated,

                                    Plaintiff,

          v.

AMERICAN INTERNATIONAL GROUP, INC.,
MARTIN SULLIVAN, STEVEN BENSINGER,
JOSEPH CASSANO and ROBERT LEWIS,

                                    Defendants.

Civil Case No: 1:08-CV-5560-RJS

**ECF CASE**

**Table of Contents**

Page

I.    PRELIMINARY STATEMENT ............................................................................. 1

II.   STATEMENT OF FACTS ................................................................................. 2

III.  OVERVIEW OF APPLICABLE LAW .............................................................. 4

IV.   THE ACTIONS SHOULD BE CONSOLIDATED ............................................ 5

V.    OAKLAND COUNTY SHOULD BE APPOINTED LEAD PLAINTIFF
      FOR THE CLASS............................................................................................... 7

      A.    Oakland County's Motion to Serve as Lead Plaintiff Is Timely ................... 7

      B.    Oakland County Is Believed to Have the Largest Financial Interest in the Relief
            Sought by the Class....................................................................................... 7

      C.    Oakland County Satisfies the Typicality and Adequacy Requirements of Rule 23 ..... 9

            1.    Oakland County's Claims Are Typical of the Claims of the Class ........................... 9

            2.    Oakland County Will Fairly and Adequately Represent the Interests of the
                  Class ................................................................................................................ 10

VI.   THE COURT SHOULD APPROVE OAKLAND COUNTY'S CHOICE OF LEAD
      COUNSEL .......................................................................................................... 10

VII.  CONCLUSION.................................................................................................... 11

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Albert Fadem Trust v. Citigroup, Inc.*,
   239 F. Supp. 2d 344 (S.D.N.Y. 2002) ................................................................. 5, 8, 9

*In re Olsten Corp Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ............................................................................ 6

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) ..................................................................................... 5

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................. 5, 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................... 9, 10

*Sofran v. LaBranche & Co., Inc.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ........................................................................... 8, 10

*Walker v. Deutsche Bank, AG*,
   No. 04 Civ. 1921 (DAB), 2005 WL 2207041 (S.D.N.Y. Sept. 6, 2005) ................................... 5


<u>Statutes</u>

15 U.S.C. § 78u-4 ........................................................................................................ 4

15 U.S.C. § 78u-4(a)(1) ................................................................................................ 7

15 U.S.C. § 78u-4(a)(3) ........................................................................................ *passim*

15 U.S.C. § 78u-4(e)(1) ................................................................................................ 8

15 U.S.C. § 78u-4(e)(2) ................................................................................................ 8


<u>Rules</u>

Fed. R. Civ. P. 23(a) ..................................................................................................... 9

Fed. R. Civ. P. 23(a)(4) .............................................................................................. 10

Fed. R. Civ. P. 42(a) ................................................................................................. 5, 6

Oakland County, a municipal corporation organized under the laws of the State of Michigan ("Oakland County" or "Movant"), respectfully submits this memorandum of law in support of its motion for: (i) consolidation of the Actions (defined below); (ii) appointment of Lead Plaintiff in the Actions; and (iii) approval of its selection of Lead Counsel for the putative class.  Movant has purchased securities of American International Group, Inc. ("AIG" or "the Company") and has suffered damages as a result of Defendants' alleged violations of the federal securities laws.[1]

## I.    PRELIMINARY STATEMENT

This Court should consolidate the pending related securities class actions against Defendants (the "Actions").  Consolidating the Actions is appropriate because they involve common factual and legal issues.  This Court should also appoint Oakland County as Lead Plaintiff for the class.  Oakland County's motion to be appointed Lead Plaintiff is timely under the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  Oakland County submits it is also the "most adequate plaintiff" to serve as Lead Plaintiff.  In fact, it satisfies each of the PSLRA's requirements for appointment as Lead Plaintiff.  At this time, Oakland County believes that it has the "largest financial interest" in the relief sought by the class, having purchased 37,063 shares of AIG common stock and approximately $50,000 in bonds and suffered estimated losses of $1,123,449.91.  Speirs Aff., Exs. C and D.  Further, Oakland County's claims against Defendants are typical of the claims of the other class members, and its interests are aligned with

---

[1]  Movant has submitted a certification setting forth its purchases of AIG securities during the relevant period.  (*See* Exhibit C to the Affidavit of Richard A. Speirs in Support of the Motion of Oakland County for Appointment of Lead Plaintiff and Lead Counsel (the "Speirs Aff.").)  Movant has also submitted a chart, pertaining to Movant's stock and bond purchases, that sets forth Movant's financial interest in the Actions.  Speirs Aff., Ex. D.  Movant is fully familiar with the facts and allegations in the cases filed in this District.

the interests of the class.  Finally, Oakland County has retained qualified counsel and will vigorously prosecute the Actions.

## II.    STATEMENT OF FACTS

This is a putative class action brought on behalf of a Class consisting of all persons and entities who purchased or otherwise acquired securities issued by AIG during the period from May 11, 2007 through and including May 9, 2008 (the "Class Period") to recover damages caused by Defendants' violation of the federal securities laws.[2]

Throughout the Class Period, Defendants made repeated false and misleading statements and disclosures concerning AIG's exposure to the subprime residential housing market – including, but not limited to, its valuation of its super senior credit default swap portfolio (the "CDS portfolio").  During this time, the Company publicly downplayed its exposure to the subprime market in virtually all aspects of its business, including its CDS portfolio, while the Company was losing more than half of its market value.  ¶¶ 1-4.  Specifically, the Company reassured investors that AIG's superior risk management, internal controls and diversification had successfully insulated the Company from the turmoil experienced in the credit markets, when in fact, AIG concealed or recklessly ignored facts regarding the mounting losses on the Company's assets and insurance products tied to the residential mortgage market.  ¶ 2.

To quell investor concerns about the value of credit default swaps which AIG Financial Products ("AIGFP") had sold that were linked to subprime mortgages, AIG held an investor meeting on December 5, 2007.  At this meeting, AIG President and Chief Executive Officer, Martin J. Sullivan ("Sullivan") stated that AIG's credit portfolio was so sound that the chance of

---

[2] "¶" references are to the complaint filed in *Jacksonville Police And Fire Pension Fund v. American International Group, Inc.*, Case No. 1:08-CV-4772-RJS (S.D.N.Y.).  (*See* Speirs Aff., Ex. B.)  A different class period has been alleged in one of the later filed actions.  *See* fn. 4.

it sustaining a loss was "close to zero." He added that the Company was "confident in [its] marks and the reasonableness of [its] valuation methods." Sullivan concluded that AIG had: "a high degree of certainty in what we have booked to date." The meeting had its intended effect – the markets were reassured and the price of AIG shares rose and continued trading at artificially inflated levels. Having reassured the market, just two days later AIG sold over $2.5 billion in newly issued debt securities. ¶¶ 55-56.

On February 11, 2008, in connection with the filing of a Form 8-K, AIG disclosed that its CDS portfolio had not declined by about $1.1 billion during October and November, as Sullivan had stated it had at the December 5, 2007 Investor Meeting. Rather, the portfolio had lost approximately $6 billion in value. ¶¶ 55, 59-61. Moreover, AIG announced that its independent auditor, PriceWaterhouseCoopers LLP, had found a material weakness in AIG's accounting and that the Company's internal valuation methods – which its executives detailed for investors in order to back up its claims of financial soundness – were flawed. ¶¶ 61, 64.

AIG again revised the value of its CDS portfolio when it filed its Form 10-K for the year-end 2007 ("2007 Form 10-K") with the Securities and Exchange Commission. The Company reported cumulative losses of $11.5 billion as of December 31, 2007 and a quarterly loss of over $5.3 billion. ¶ 67. In the 2007 Form 10-K, AIG also revealed that it had repurchased $754 million of liquidity puts in 2007, and that it had provided third-parties with $3 billion in liquidity facilities in the event that AIGFP was required to repurchase additional CDOs over the ensuing three years. These disclosures showed that AIG knew or recklessly disregarded that the Company faced serious exposures to the subprime mortgage market – given that the Company had already been forced to repurchase hundreds of millions of dollars worth of mortgage-linked CDOs in 2007 – but failed to inform investors of these actual and potential risks. ¶ 73.

On May 8, 2008, AIG released its 2008 first quarter results for the quarter ended March 31, 2008. The Company's net loss for the quarter was $7.8 billion. The Company largely attributed the losses to an additional $9.1 billion decline in the valuation of its CDS portfolio. ¶¶ 77-84.

As a result of these May 8th disclosures, the price of AIG stock fell from $44.15 to $40.28, representing an 8.8% loss. ¶ 83. On May 20, 2008 AIG raised over $20 billion in new capital to fortify itself from future losses relating to its residential mortgage exposure. ¶ 84.

## III.     OVERVIEW OF APPLICABLE LAW

The PSLRA sets forth the procedure for appointing the lead plaintiff in a securities class action. The first step requires providing notice to members of the putative class of the pendency of a class action, the claims asserted, and the purported class period. Specifically, the PSLRA provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)     that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).[3]

The PSLRA also sets out the requirements for selection of a lead plaintiff to oversee class actions brought pursuant to the federal securities laws. 15 U.S.C. § 78u-4(a)(3). There is a

_____

[3] 15 U.S.C. § 78u-4 amends the Securities Exchange Act of 1934 (the "Exchange Act") to adopt the PSLRA's provisions.

4

rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the person who:

    (aa)    has either filed the complaint or made a motion in response to [aforementioned] notice . . .;

    (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  As set forth below, Movant satisfies each of the PSLRA's statutory requirements to serve as Lead Plaintiff here.

## IV.    THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA establishes a two-step process for resolving lead plaintiff and consolidation issues when multiple actions asserting substantially the same claims on behalf of a class have been filed.  A court must first decide the consolidation motion and then decide the lead plaintiff issue "[a]s soon as practicable."  15 U.S.C. § 78u-4(a)(3)(B)(ii).

Consolidation of actions pursuant to Fed. R. Civ. P. 42(a) is appropriate when the actions involve common questions of law and fact.  *See Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir. 1990); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Under Rule 42(a), this Court has broad discretion to determine whether consolidation is appropriate, "and in making this determination, [is] to consider whether judicial economy favors consolidation."  *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *Walker v. Deutsche Bank, AG*, No. 04 Civ. 1921 (DAB), 2005 WL 2207041, at *2 (S.D.N.Y. Sept. 6, 2005) ("[S]o long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate.") (alteration in original) (citation and quotation marks omitted); *see also Johnson*, 899 F.2d at 1285.  It is "well recognized" that the "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding

duplication of discovery, and minimizing costs." *Kaplan*, 240 F.R.D. at 91 (quoting *In re Olsten Corp Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998)).

Presently, pending before this Court are four related securities class action cases:

| Case Name | Case No. |
| --- | --- |
| *Jacksonville Police And Fire Pension Fund v. American International Group, Inc.* | No. 1:08-CV-4772-RJS |
| *James Connolly v. American International Group, Inc.* | No. 1:08-CV-5072-RJS |
| *Maine Public Employees Retirement System v. American International Group, Inc.* | No. 1:08-CV-5464-RJS |
| *Ontario Teachers' Pension Plan Board v. American International Group, Inc.* | No. 1:08-CV-5560-RJS |

The Actions arise from the same set of operative facts and alleged course of conduct by Defendants involving purchase of AIG Securities, and raise the same legal issues pursuant to Sections 10(b) and 20(a) of the Exchange Act.[4]  Thus, the Actions, and any related actions that are subsequently filed in this District or transferred to this District, should be consolidated.

The selection of lead plaintiff and lead counsel is the necessary first step to begin prosecution of the Actions.  Therefore, the PSLRA contemplates a ninety-day period from the early notice publication to the selection of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i).  Because the PSLRA explicitly ties the selection of a lead plaintiff to the consolidation of related actions, Movant respectfully requests that this Court grant the consolidation motion as soon as practicable.  A prompt determination is reasonable and warranted under Fed. R. Civ. P. 42(a).

---

[4] *Jacksonville v. American International Group, Inc., Connolly v. American International Group, Inc.,* and *Maine Public Employee Retirement System v. American International Group, Inc.*, each alleges a class period from May 11, 2007 to May 9, 2008.  One action, *Ontario Teachers' Pension Plan Board v. AIG,* alleges a class period from November 16, 2006 to June 6, 2008.

## V.    OAKLAND COUNTY SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

The PSLRA provides guidelines for the appointment of a lead plaintiff in "each private action arising under [the securities laws] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). Because Oakland County is the "most adequate plaintiff," as defined by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), it should be appointed Lead Plaintiff for the class.

### A.  Oakland County's Motion to Serve as Lead Plaintiff Is Timely

Within sixty days after the publication of a notice of a class action, any person or group of persons that is a member of the proposed class may move the Court to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Here, the earliest notice of a class action regarding Defendants was published on May 21, 2008. (*See* Speirs Aff., Ex. A.) As a purchaser of AIG Securities during the alleged Class Period, Oakland County is a member of the proposed class and has timely moved for appointment as Lead Plaintiff within sixty days of the notice, in compliance with the PSLRA.[5] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Oakland County therefore satisfies the PSLRA's initial requirement.

### B.  Oakland County Is Believed to Have the Largest Financial Interest in the Relief Sought by the Class

Pursuant to the PSLRA, this Court should next determine which lead plaintiff applicant has the "largest financial interest" in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Although the PSLRA does not specifically indicate the manner in which

---

[5] The PSLRA does not require Movant to have filed a complaint against Defendants. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa) (instructing that the most adequate plaintiff will have *either* filed the complaint or made a motion for appointment as lead plaintiff).

7

the "largest financial interest" should be calculated, it provides that a plaintiff's damages in any

securities fraud class action may not exceed:

> [T]he difference between the purchase or sale price paid or received, as
> appropriate, by the plaintiff for the security and the mean trading price of
> the security during the period beginning immediately after dissemination
> of information correcting the misstatement or omission and ending on the
> date on which the plaintiff sells or repurchases the security.

15 U.S.C. § 78u-4(e)(2).

Alternatively, when a plaintiff continues to hold the security that is the subject of the

action, damages may not exceed:

> [T]he difference between the purchase or sale price paid or received, as
> appropriate, by the plaintiff for the subject security and the mean trading
> price of that security during the 90-day period beginning on the date on
> which the information correcting the misstatement or omission that is the
> basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1).

Oakland County believes at this time that it has the "largest financial interest" in the

relief sought by the class. During the Class Period, it purchased 37,063 shares of AIG common

stock and approximately $50,000 in bonds and suffered estimated losses of $1,123,449.91. (*See*

Speirs Aff., Attachment A to Ex. C and Ex. D.) Given its significant financial interest, Oakland

County believes that it satisfies the PSLRA's second requirement for appointment as Lead

Plaintiff. Pursuant to the PSLRA, the movant with the greatest financial interest is, in fact,

*presumptively* the "most adequate" to serve as Lead Plaintiff. *See Albert Fadem Trust*, 239 F.

Supp. 2d at 347. Once the movant with the *largest* financial interest is determined, the inquiry

ends and the Court must look *no further* at the other lead plaintiff candidates unless the adequacy

and typicality the presumptive lead plaintiff is rebutted. *See Sofran v. LaBranche & Co., Inc.*,

220 F.R.D. 398, 402 (S.D.N.Y. 2004).

**C.  Oakland County Satisfies the Typicality and Adequacy Requirements of Rule 23**

In addition to meeting the PSLRA's requisites set forth above, a lead plaintiff must also satisfy the requirements of Fed. R. Civ. P. 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class, (3) the claims
> or defenses of the representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties will fairly and
> adequately protect the interests of the class.

For purposes of appointing a lead plaintiff, however, a wide-ranging analysis under Fed. R. Civ. P. 23 is not appropriate at this stage of the litigation.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004).  All that is required is a "preliminary showing" that the proposed lead plaintiff will satisfy the requirements of typicality and adequacy.  *Id.*; *Albert Fadem Trust*, 239 F. Supp. 2d at 347.  As discussed below, Oakland County satisfies both the typicality and adequacy requirements of Rule 23(a), further supporting its appointment as Lead Plaintiff.

1.  Oakland County's Claims Are Typical of the Claims of the Class

Pursuant to Fed. R. Civ. P. 23(a), the claims or defenses of the representative party must be typical of those of the class.  "Typicality exists if claims 'arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Pirelli*, 229 F.R.D. at 412 (quoting *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992)).  The claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality.  *Id.*

Oakland County satisfies the typicality requirement of Fed. R. Civ. P. 23(a).  Oakland County's claims and the class' claims arise from damages sustained due to the same alleged

course of conduct by Defendants during the Class Period. Further, Oakland County and class members assert the same violations of federal securities laws.

        2.  <u>Oakland County Will Fairly and Adequately Represent the Interests of the Class</u>

Under Fed. R. Civ. P. 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." *Pirelli*, 229 F.R.D. at 412. To "satisfy the adequacy requirement . . . . '(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation.'" *Sofran*, 220 F.R.D. at 402-03 (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003)).

Oakland County's interests are aligned with — and certainly are not antagonistic to — the interests of the other class members. Like the other class members, it is a victim of Defendants' alleged fraud and sustained damaged when the truth about the impact of subprime mortgage investments upon AIG was revealed to investors. Due to its significant financial stake in the Actions, interest in prosecuting the Actions, and choice of proposed Lead Counsel, it is clear that Oakland County will vigorously prosecute the claims against Defendants and protect the interests of the class.

**VI.    THE COURT SHOULD APPROVE OAKLAND COUNTY'S CHOICE OF LEAD COUNSEL**

Pursuant to the PSLRA, the lead plaintiff is permitted, subject to the Court's approval, to select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). Oakland County has selected and retained Zwerling, Schachter & Zwerling, LLP ("Zwerling, Schachter") to represent it and serve as lead counsel for the putative class. Zwerling, Schachter has extensive experience in the areas of securities class action litigation and other complex litigation, and has

been responsible for significant successful results on behalf of injured investors in numerous securities class action lawsuits, as well as legal decisions that enable litigation such as this to be successfully prosecuted. (*See* Speirs Aff., Ex. E.)

## VII.    CONCLUSION

For the foregoing reasons, Oakland County respectfully requests that the Court: (1) consolidate the Actions; (2) grant its motion for appointment as Lead Plaintiff; and (3) approve its choice of Zwerling, Schachter as Lead Counsel for the putative class.

Dated:  July 21, 2008

Respectfully Submitted,

**ZWERLING, SCHACHTER & ZWERLING, LLP**

By: s/ Jeffrey C. Zwerling

Jeffrey C. Zwerling (RS 7924)
Richard A. Speirs (RS 8872)
Stephen L. Brodsky (SB 4354)
41 Madison Avenue
New York, NY 10010
Tel:  (212) 223-3900
Fax:  (212) 371-5969
jzwerling@zsz.com
rspeirs@zsz.com
sbrodsky@zsz.com

*Attorneys for Lead Plaintiff Movant*
*Oakland County*

11

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, on behalf of itself and all others similarly situated,<br><br>                                  Plaintiff,<br><br>                v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS,<br><br>                               Defendants. | Civil Case No: 1:08-CV-4772-RJS<br><br>**ECF CASE** |
| JAMES CONNOLLY, Individually and On Behalf of All Others Similarly Situated,<br><br>                                  Plaintiff,<br><br>                vs.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS and DAVID L. HERZOG,<br><br>                               Defendants. | Civil Case No: 1:08-CV-5072-RJS<br><br>**ECF CASE** |
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>                                  Plaintiff,<br><br>                  v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS,<br><br>                               Defendants. | Civil Case No: 1:08-CV-5464-RJS<br><br>**ECF CASE** |

ONTARIO TEACHERS` PENSION PLAN
BOARD, on behalf of itself and all others similarly
situated,

                                     Plaintiff,

          v.

AMERICAN INTERNATIONAL GROUP, INC.,
MARTIN SULLIVAN, STEVEN BENSINGER,
JOSEPH CASSANO and ROBERT LEWIS,

                                Defendants.

Civil Case No: 1:08-CV-5560-RJS

**ECF CASE**

# CERTIFICATE OF SERVICE

I, Donald Lanier, am over 18 years old and not a party to this action;

I hereby certify that on July 21, 2008, I electronically filed the foregoing:

NOTICE OF MOTION OF OAKLAND COUNTY FOR CONSOLIDATION AND FOR
APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL.

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF OAKLAND
COUNTY FOR CONSOLIDATION AND FOR APPOINTMENT OF LEAD
PLAINTIFF AND LEAD COUNSEL .

AFFIDAVIT OF RICHARD A. SPEIRS IN SUPPORT OF THE MOTION OF
OAKLAND COUNTY FOR CONSOLIDATION AND FOR APPOINTMENT OF
LEAD PLAINTIFF AND LEAD COUNSEL.

[PROPOSED] ORDER CONSOLIDATING THE ACTIONS, APPOINTING
OAKLAND COUNTY AS LEAD PLAINTIFF AND APPROVING LEAD
PLAINTIFF`S CHOICE OF LEAD COUNSEL

with the Clerk of the Court using the CM/ECF system which will send notification of such filing
to the following:

- **Salvatore Jo Graziano**
  SGraziano@blbglaw.com

- **David Robertson Hassel**
  DavidH@blbglaw.com

- **Stuart Berman**
  sberman@sbtklaw.com

- **Sean M. Handler**
  ecf_filings@sbtklaw.com

- **Christopher L. Nelson**
  cnelson@sbtklaw.com

- **Jonathan Scott Shapiro**
  jshapiro@theshapirofirm.com

- **Robert Jason Shapiro**
  rshapiro@theshapirofirm.com

- **Daniel E. Bacine**
  dbacine@barrack.com

- **Regina Marie Calcaterra**
  rcalcaterra@barrack.com

- **A. Arnold Gershon**
  agershon@barrack.com

- **Noam Noah Mandel**
  noam@blbglaw.com

- **Gerald Harlan Silk**
  jerry@blbglaw.com

I also hereby certify that I have mailed by United States Postal Service the documents to the following non-CM/ECF participants:

**Gerald H. Silk, Esq.**
Bernstein Litowitz Berger & Grossman LLP
1285 Avenue of the Americas
New York, NY 10019

**Darren J. Check, Esq.**
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087

**Leonard Barrack, Esq.**
Barrack, Rodos & Bacine
2001 Market Street
3300 Two Commerce Square
Philadelphia, PA 19103

**Jeffrey W. Golan, Esq.**
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

**Robert A. Hoffman, Esq.**
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

I certify under penalty of perjury that the foregoing is true and correct.

Executed on July 21, 2008

Donald Lanier